Kelly C. Hobbs and Celestia A. Hobbs v. Commissioner.
Hobbs v. Commissioner
Docket No. 92080.
United States Tax Court
T.C. Memo 1964-208; 1964 Tax Ct. Memo LEXIS 129; 23 T.C.M. (CCH) 1258; T.C.M. (RIA) 64208; August 5, 1964
*129 Held: 1. Petitioner cannot deduct as worthless a debt which has been voluntarily forgiven. 2. A second alleged debt has not been proved worthless in the year in issue so as to support deduction. 3. There is no evidence that the first of the above debts was forgiven for a business purpose, nor any evidence that a loss as to the second alleged debt occurred during the year in issue; consequently petitioner's alternative claim of business losses is denied. 4. Petitioner's efforts to revoke his forgiving of the first of the above debts, though unsuccessful, were reasonable, and such debt was "business connected," therefore, an allocable portion of claimed attorneys' fees and court costs are allowed as deductible. Thomas R. Ward, Broadmoor Mart, Meridian, Miss., Roland J. Mestayer, Jr., and C. Scott Edmundson, Jr., for the petitioners. Robert W. Goodman and Glen W. Gilson, II, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined deficiencies in the income taxes of petitioners in the amounts of $2,272.28 and $2,940.42 for the year 1956 [1] and 1959, respectively. The following issues remain to be decided: 1. Are petitioners entitled *130 to a deduction of $21,000 in 1959 on account of the alleged worthlessness of a debt owed to petitioner Kelly C. Hobbs by Gladys Martin? 2. Are petitioners entitled to a bad debt deduction in the amount of $12,000 in the year 1959 because of inability to recover advances allegedly made to Gladys Martin by petitioner Kelly C. Hobbs subsequent to May 13, 1957? 3. Did petitioners suffer deductible business losses or losses from transactions entered into for profit on account of the transactions referred to in (1) or (2) above? 4. Is the sum of $625.98 expended by petitioners in 1959 for attorneys' fees and court costs in connection with litigation against Gladys Martin deductible as an ordinary and necessary expense of doing business or as an expense for the production of income? Findings of Fact Some of the facts have been stipulated and are so found. Petitioners, husband and wife, are residents of Meridian, Mississippi. They filed their joint Federal income tax returns for the calendar years 1956 and 1959 with the district director of *131 internal revenue at Jackson, Mississippi. For several years prior to and including 1959, Kelly C. Hobbs (hereinafter referred to as petitioner) was engaged in various business activities in Meridian, Mississippi, including the purchase and sale of real estate with Gladys Martin (hereinafter sometimes referred to as Gladys) for their joint profit. Petitioner was also engaged, during the years in question, in the business of selling automobiles and automobile supplies, and in the business of cattle farming. In February 1957 petitioner made a financial statement showing a net worth of $170,500. Frequently, petitioner would advance money to Gladys for the purchase of real estate for their joint profit, and she would execute a promissory note and deed of trust. One such transaction resulted in the execution by Gladys of a note for $21,000, [2] dated May 13, 1957, and due in one year, payable to James Pigott. (Pigott, a nephew of petitioner, was made payee at the request of petitioner. Pigott had no real interest in the transaction, but served merely as a strawman for petitioner.) This note was secured by a deed of trust on real property (hereinafter referred to as the Oakdale Avenue property) *132 situated in the City of Meridian, Lauderdale County, Mississippi. Record title to the property was held by Gladys; the deed of trust was not recorded. At various times between May 13, 1957, and the beginning of November 1957, petitioner transferred to Gladys sums of money aggregating not more than $12,000 nor less than $2,000. Gladys used part of the money she received from petitioner to build a house on the Oakdale Avenue property. She lived in this house for more than a year prior to its sale in September 1959. In most instances when petitioner had lent money for any reason, he had obtained a note from the debtor. And on the numerous occasions on which he had borrowed money from banks, he had been required to sign notes. However, petitioner never obtained any written evidence of indebtedness from Gladys Martin with respect to the money he delivered to her between May 13, 1957, and November 1957. Sometime after May 13, 1957, and prior to December 3, 1957, petitioner notified Gladys *133 that he was going to return the $21,000 note and deed of trust to her. He did not indicate that he expected the note to be returned to him or altered, but led Gladys to believe he was making her a gift. Subsequently the note and deed of trust were delivered to Gladys at her home by an employee of petitioner. On December 3, 1957, Pigott, the payee of the note, filed suit against Gladys in the Chancery Court of Lauderdale County, Mississippi, seeking return of the note and deed of trust and enforcement of their terms. After joinder of petitioner as the real party in interest on the plaintiff's side, this action, numbered B-7060 on the court records, was brought to trial. The final decree, entered August 18, 1958, dismissed the complaint with prejudice. The chancellor held that the surrender of the note by petitioner constituted a "renunciation" within the meaning of section 163 of the Mississippi Code of 1942. [3] *134 The decree was affirmed by the Supreme Court of the State of Mississippi on June 8, 1959, in a per curiam decision reported as Pigott v. Martin, 112 So. 2d 547 (Miss. 1959). [4]
On July 7, 1958, petitioner filed a complaint in the Chancery Court of Lauderdale County, No. B-7516, against Gladys, seeking to impress a lien upon the Oakdale Avenue property. The complaint was dismissed without prejudice by order of the court filed July 16, 1959. On September 8, 1959, petitioner filed another complaint, No. B-8386, to foreclose on the same property. A decree dismissing this suit with prejudice was entered on February 24, 1960. Gladys and her husband, Troy S. Martin, Sr., had deeded this property to Rebecca M. Sandusky on September 23, 1959, for a total *135 consideration of $25,500. The proceeds were paid into escrow. After the dismissal of suit No. B-8386, the escrow agent distributed the net proceeds to Gladys. During 1959 petitioner expended the sum of $625.98 for court costs and attorneys' fees in connection with the litigation described above against Gladys Martin. During 1959 petitioner also expended $335.40 for charitable purposes. In their joint income tax return for the calendar year 1959 petitioner and his wife claimed a deduction in the amount of $33,000 [5] *136 on account of petitioner's inability to collect the notes from Gladys Martin, and also a deduction of $625.98 for attorneys' fees in connection with the litigation. As a result, the return showed an adjusted gross income of minus $17,450.12. Petitioner carried back the reported loss to 1956 under section 172 of the 1954 Code[6] and on May 31, 1960, received a refund of $2,272.28, the entire tax paid by petitioner for 1956. In his notice of deficiency respondent disallowed each of the two aforementioned deductions claimed on petitioner's 1959 return. As to the $21,000 note, he determined that: * * * if a debtor-creditor relationship ever existed, such relationship was severed by you, the creditor, thereby effecting a forgiveness and/or a gift of any amount which may have been owed. He also determined that the amount expended for attorneys' fees was not an ordinary and necessary business expense. As a result of these determinations respondent concluded that there was no net operating loss for 1959. Opinion The first issue concerns the right of petitioner to a deduction under section 166(a)(1) [7] for the worthlessness of the *137 $21,000 debt which was extinguished as a result of the litigation in the Mississippi state courts between petitioner and Gladys Martin, the debtor. Respondent disallowed the deduction on the ground that the debt was voluntarily canceled by petitioner. Petitioner claims he never intended to renounce the debt, notwithstanding the decision of the state courts. It has long been established that the voluntary cancellation by the creditor of a debt owed by a solvent debtor does not give rise to a bad debt deduction. American Felt Co. v. Burnet, 58 F. 2d 530 (C.A.D.C. 1932), affirming 18 B.T.A. 504 (1929). Cf. Earl V. Perry, 22 T.C. 968 (1954); Joseph M. Byrne, 1 B.T.A. 996 (1925). "The disinclination of a creditor to force payment does not make a debt 'worthless,' as that term is used in * * * [section 214(a)(7) of the Revenue Act of 1918, the predecessor of section 166(a)(1) of the 1954 Code]." G. C. Krack, 1 B.T.A. 1119, 1120 (1925). A creditor who voluntarily cancels a debt is no more entitled to a bad debt deduction *138 than one who makes a gift of the debt to a third person. Moreover, once a debt has been canceled by the voluntary act of the creditor, later unsuccessful attempts to re-establish it cannot create the right to a deduction. "[In] such a case there is not an ascertainment of worthlessness of an existing debt, but an ascertainment of the nonexistence of such debt." Federal Fuel Co., 3 B.T.A. 814, 816 (1926). Accord, Domhoff & Joyce Co., 17 B.T.A. 1015 (1929), affd. 50 F. 2d 893 (C.A. 6, 1931). Respondent contends that the finding of the state court that petitioner had voluntarily renounced the debt is conclusive upon us. He argues that petitioner has had his day in court on the issue of voluntariness and is not entitled to relitigate the question here. We express no opinion concerning the merits of respondent's contention, because, as we view the case, there is no necessity to decide the question. Disregarding the testimony before the Chancery Court of Lauderdale County in the case of Pigott v. Martin, 112 So. 2d 547 (Miss. 1959), [8] the record contains very little evidence concerning the circumstances under which Gladys obtained possession of the $21,000 note. Petitioner admits that *139 he was not forced to deliver the note to Gladys. He maintains, however, that he did not at any time intend to make a gift of the debt. Rather, it is petitioner's contention that Gladys was to redraw the note to include advances made to her subsequent to May 13, 1957. The record does not support petitioner's position. Petitioner's self-serving and uncorroborated testimony at trial concerning his intentions at the time the note was delivered to Gladys is not persuasive, in view of his evasive manner on the witness stand and the directly conflicting testimony of Gladys Martin. [9] Petitioner's attempts to enforce the note by suing Gladys in the state courts are as readily explained by petitioner's later regretting his generosity as by his lacking an intention to renounce the debt at the time the note was delivered. Nor are we moved by the argument that a man with a net worth *140 of at least $100,000 (taking the view of the evidence most favorable to petitioner) would never under any circumstances make a gift of $21,000. Finally, there is nothing in the record to show that petitioner had ever previously returned a note to a debtor for the purpose of having it redrawn in a larger amount. [10] We find ourselves unable to accept petitioner's explanation *141 of his actions in returning the note to Gladys. We hold, therefore, that petitioner has failed to carry his burden of proving error in respondent's determination that petitioner voluntarily severed the debtor-creditor relationship existing between himself and Gladys Martin so as to effect a gift or forgiveness of the $21,000 debt. It follows that petitioner is not entitled to a deduction for the worthlessness of the debt. The second issue is whether petitioner is entitled to a bad debt deduction of $12,000 for alleged advances to Gladys Martin after May 13, 1957. It appears that Gladys did in fact receive some money from petitioner between May 13 and the beginning of November 1957. The evidence concerning the amount of the advances and their nature, i.e., whether gifts or loans, is not only conflicting but quite confused. Petitioner testified that he attempted to collect these advances by demanding payment from Gladys over the telephone. He also claims in his brief that the suits filed against Gladys on July 7, 1958, and September 8, 1959, in the Chancery Court of Lauderdale County were aimed at collecting these loans. Respondent argues that petitioner has failed to prove the existence *142 of a debtorcreditor relationship with respect to the advances in question. In the alternative, he contends that, even if a debt existed, it has not been shown that it became worthless during the year 1959. Without expressing an opinion on respondent's first contention, we hold that petitioner has not proven the worthlessness of the alleged debt within the taxable year before us. Petitioner does not show the debtor to have been insolvent at any time. The suit instituted against her in July 1958 was dismissed without prejudice. The suit begun in September 1959 was not dismissed with prejudice until February 1960. There is no other evidence that the debt was worthless. The third issue is presented by petitioner's alternative claim that he is entitled to a deduction for a business loss or a loss from transactions entered into for profit [11] *143 with respect to the $21,000 debt and the alleged $12,000 advances. Petitioner's claim is wholly without merit. In Spring City Co. v. Commissioner, 292 U.S. 182(1934), the Supreme Court held that the provisions of the tax law allowing deductions for losses and for bad debts are mutually exclusive. "The making of the specific provision as to debts indicates that these were to be considered as a special class and that losses on debts were not to be regarded as falling under the preceding general provision." 292 U.S. at 189. See Putnam v. Commissioner, 352 U.S. 82, 87 (1956). This rule is dispositive of the question before us. There is no evidence that petitioner had a business purpose in rendering the $21,000 debt uncollectible, as in cases like Lab Estates, Inc., 13 T.C. 811 (1949), acq. 1950-1 C.B. 3. Moreover, as we have already pointed out, there is no showing that the claimed $12,000 loss occurred in 1959. Finally, petitioner asserts error in respondent's denial of a deduction under section 162 [12] or 212 [13] for attorneys' fees in the amount of $625.98. This sum was spent *144 in connection with the various suits petitioner instituted against Gladys Martin in the Mississippi courts. The record is barren of evidence as to the purpose of the suits instituted in July 1958 and September 1959. Petitioner in his briefs asserts that they were brought to collect the advances made after May 13, 1957. These assertions are not evidence, (Tax Court Rule 31(f)) and we have no way of ascertaining the facts other than petitioner's bare statement in his brief. We have no access to the reports of the Chancery Court of Lauderdale County, Mississippi, and petitioner has failed to produce them. It follows that petitioner *145 has failed to show that expenses attributable to at least two of the suits in question were in any way related to a trade or business or to income-producing property. The other litigation involved the $21,000 note discussed at length above. If petitioner had been successful in the state courts he would have recovered on the original debt. Since the loan was related to petitioner's real estate business, expenses in collecting it would have been deductible under section 162 as ordinary and necessary business expenses. Richard Croker, Jr., 12 B.T.A. 408 (1928), acq. VII-2 C.B. 10. Petitioner's failure to prevail in the state court litigation does not in and of itself preclude him from deducting his expenses in connection therewith, if he was reasonable in making them. Cf. Paul Draper, 26 T.C. 201 (1956), acq. 1956-2 C.B. 5; J. Raymond Dyer, 36 T.C. 456 (1961), acq. 1962-1 C.B. 4. We have held in an earlier part of this opinion that petitioner failed to prove error in respondent's determination that he voluntarily forgave the $21,000 debt. Nevertheless, there is no evidence that petitioner brought these suits in bad faith, or without a reasonable prospect of success. If a prudent *146 businessman would have sued in these circumstances, there is no reason to penalize failure by denying the deduction for expenses. J. Raymond Dyer, supra at 466. In effect, petitioner was trying to revoke a gift of business property made under somewhat ambiguous circumstances. The legal question involved in the state court, renunciation of a negotiable instrument by delivery to the maker, has not been litigated frequently. See Annot., 65 A.L.R. 2d 593, 623, sec. 15 (1959). A voluntary renunciation under circumstances such as are presented here is not necessarily inconsistent with a subsequent reasonable expectation of recovering the debt. We conclude that the expenditures for attorneys' fees incurred in prosecuting the action of Pigott v. Martin, 112 So. 2d 547 (Miss. 1959), are deductible as ordinary and necessary expenses of carrying on petitioner's real estate business. Since only a part of the claimed deduction for attorneys' fees and court costs has been proved to be allowable, it is appropriate to allocate between the deductible and nondeductible portions. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). The record is not clear, but we surmise that the actions which sought *147 to impress a lien on the Oakdale Avenue property never came to a formal trial. On the other hand, the suit involving the $21,000 note was not only tried, but was also appealed to the Mississippi Supreme Court. It seems likely therefore, that the major portion of the $625.98 fee and costs were spent in connection with the latter action. Weighing against petitioner because the deficiencies in proof are his responsibility we allow a deduction of $400 on this issue. In view of our decision, petitioner will no longer have a loss for 1959. He will therefore be able to get some tax benefit from his charitable contributions of $335.40. Decision will be entered under Rule 50. Footnotes
1. The year 1956 is involved only because petitioners received a refund of taxes paid in that year by virtue of a net operating loss carryback from 1959.↩
2. The consideration for this note included $12,000 previously advanced by petitioner and represented by a note for that amount signed by Gladys, bearing the date December 4, 1956, and payable to petitioner.↩
3. Section 163 of the Mississippi Code of 1942, which is identical to section 122 of the Uniform Negotiable Instruments Act, reads as follows: Renunciation by holder. - The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon.↩
4. In the stipulation and the briefs, this case is incorrectly cited as 111 So. 2d 547↩.
5. The $33,000 deduction claimed on the return consisted of the $21,000 note, plus the $12,000 note referred to in footnote 2, supra. It has since been stipulated that the $12,000 note was in fact merged into the $21,000 note, and petitioner now admits that he is not entitled to a deduction of more than $21,000 with respect to these transactions. However, in the petition there was claimed, for the first time, an additional deduction for advances allegedly made by petitioner to Gladys Martin after May 13, 1957, the date of the $21,000 note. These advances (coincidentally totaling, according to petitioner, $12,000), along with the $21,000 note, are still in issue. 6. All statutory references are to the Internal Revenue Code of 1954 as amended.↩
7. SEC. 166. BAD DEBTS. (a) General Rule. - (1) Wholly worthless debts. - There shall be allowed as a deduction any debt which becomes worthless within the taxable year.↩
8. The transcript of the proceedings before the chancellor is in evidence, but the parties are agreed that it was not admitted generally, and that such limited admission was proper. Accordingly, we have not utilized it in finding any of the facts of this case, except to establish the precise holding of the chancellor.↩
9. Although Gladys was rather nervous on the witness stand, she appeared to be trying to tell the truth. We cannot agree with petitioner that her testimony is entitled to less weight than his. ↩
10. If anything, the evidence indicates that this would be inconsistent with prior dealings between these same parties. In response to a question on cross-examination, petitioner testified as follows: A. Well, in this case with Mrs. Martin, I would get a note ever so often. I would loan her the money along until I thought it was as far as it ought to go before I got more security, and then I would ask her to renew. As we understand this testimony, petitioner had on other occasions lent money to Gladys while prior advances were outstanding. When the amounts became large, Gladys would execute a new note, not alter an existing one.↩
11. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business; (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; * * *↩
12. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * * ↩
13. SEC. 212. EXPENSES FOR PRODUCTION OF INCOME. In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year - (1) for the production or collection of income; (2) for the management, conservation, or maintenance of property held for the production of income; * * *↩